And we move to the final case this morning, Santiago v. Streeval. Mr. Anwar. Good afternoon, Your Honor. May it please the Court. In Rahe v. United States, the United States Supreme Court held that for an individual to be convicted of being a felon in possession, the government had to demonstrate that the individual knew not only that they were possessing a firearm, but also that they were a felon. The government convicted Marcos Santiago without ever making that showing. Mr. Santiago. To be particular, they have to know that they have been convicted in any court of a crime punishable by more than a year? That's correct, Your Honor. They don't have to necessarily know. They don't need to know the label felon or something, but they do have to know. As I understand it, your argument is since Mr. Santiago never served more than about five months, before we even get to his mental capacity, he didn't, or at least it needed to be proved, that he knew that he had been convicted of something that carried a punishment for a term exceeding a year. Yes. Because his personal experience was only five months. That's correct, Your Honor. So the one thing that is clear in this court's case law and courts across the country is that the government doesn't need to prove that he did not know he wasn't allowed to carry a firearm. So ignorance of the law is no excuse. That's well established. But he does need to know that he was among the category of people that were restricted from carrying a firearm, which in this case would be a person that is sentenced to a crime of over a year. And that is our primary argument is that— Sentenced to more than a year, though, did he not? We don't believe that he did, Your Honor. Nothing in the record suggests that would be the case. Was he present at sentencing? I'm sorry, what was that? Was he present at sentencing? Yes, he was, Your Honor. And did the judge say where the sentence was and a suspended portion of it? So we don't have actually anything in the record precisely on that point. The government hasn't introduced any transcripts from any of the sentencing proceedings or anything of that point. They also haven't cited any state law that would have necessarily required that to be the case. There's a couple proceedings that are at issue here. The initial is his plea hearing. It's fair to assume that that proceeding, he would have been told a maximum penalty that you're pleading to. It's up to X certain amounts of months. There's subsequent proceedings in which he violated his probation or his parole. He came back and was granted immediate probation again. That is much less clear exactly what he was told. So the government is relying very much on the notion that on three occasions, original sentencing, probation violation one, probation violation two, he's told your sentence is 23 months, but we're letting you out on time served. And you're contesting the record on that? No. So the first point is just that we don't know exactly what he was told. There's nothing they haven't pointed to anything. It's possible that when he came. So you're asking for an evidentiary hearing on that? So we don't think it's necessary. We think it's very possible that he came into these probation hearings and the judge simply said, I'm going to reinstate my original sentence and I'm going to let you go again. We're not going to stay out of trouble more or less. We don't have in the record the judge saying your sentence is up to 23 months, your sentence is up to 23 months, your sentence is up to 23 months. The other point, though, is even if we did have that, Your Honor, even if the judge did say that clearly, it's important to keep in mind that Mr. Santiago was convicted of five different crimes, all pertaining to these three very minor incidents in which he took a purse off of his mother's bed, took a shoebox with video games from his sister, took a radio from a garage attendant. He was charged with three misdemeanor thefts associated with each one of those events and then two trespass charges. So at the end of the day, he's actually charged for 23 months, up to 23 months for five different crimes. If you average that out, that's less than five months per crime. The government presents this argument as if he's told you are a felon, you are a felon, you are a felon. But the fact that you have 23 months for five crimes, there's nothing conspicuous about that, that would immediately tell you that any one of those is a felony. You would actually think that they are. Mr. Anwar? Yes, Your Honor. Excuse me. If I could ask a couple of questions. Has Mr. Santiago stated unequivocally in this record that he did not know he had been sentenced and convicted of a crime punishable by more than 12 months in prison? So Mr. Santiago has an affidavit prepared that he would be prepared to introduce into the district court to swear to that effect. He didn't have the opportunity, or he didn't submit that to the district court full of, this record, at least under Section 2255, which is kind of analogous, is entitled to deny a petition so long as the record conclusively demonstrates there are no grounds for relief. We think, you know, at a minimum, that very high bar is not met. He should at least have the opportunity to introduce that evidence into the record. But he's prepared to make that representation. If I could further ask, has any other circuit yet granted relief on Rahafe errors under 2255 or 2241? So they have granted relief under plain error. They have not under 2255. That's not my question. I'm very familiar with the plain error. Right, Your Honor. They have not, Your Honor. A lot of that is a function of timing. So Rahafe was decided in 2019, so the cases that were decided first, especially at the circuit court level, were cases that were already on direct appeal. The cases were already in the system. They obviously had priority. So they were decided immediately. So almost all the case law that has to do with Rahafe in this context is on plain error review. The 2255 and the 2241 petitions obviously had to be filed in the first place in the district court below. Then, you know, there's several cases that are not given priority in the same way as criminal cases. I'm familiar with the process. Okay. Could I also ask you, as I understand it, you're agreeing that on the miscarriage of justice element of 2241, Mr. Santiago needs to be able to establish the actual innocent standard familiar under habeas law from, say, Schlup and House against Bell. If that's the standard, no reasonable juror could find guilt beyond a reasonable doubt. I guess I'm having trouble seeing how that could possibly be satisfied given the sentence of 23 months. We're not talking about the plain error standard. We're talking about a much higher bar. So, Your Honor, I guess two responses. One is in Schlup itself. The court actually there reversed the court below that applied a clear and convincing standard. And the court noted that the appropriate standard was a preponderance standard. So it's more likely than not than any reasonable juror would have a reasonable doubt. And the court went out of its way to note that that was important because it had to be a meaningful avenue to show miscarriage of justice. The evidence in Schlup, I mean, usually when we talk about these actual innocence cases with Bell, it's DNA evidence that excludes the defendant from having committed the terrible crime there. And in Schlup, it's evidence that the petitioner could not physically have committed the crime as well. Here, the issue has to do with, the only issue has to do with Mr. Santiago's memory and mind. And it's a little hard for me to see such conclusive proof there. So a couple of things, Your Honor. In this, you're right that in general, plain error is a more forgiving standard than actual innocence. When it comes to rehave claims, we actually believe that those very much are in line with one another. If we look at the Pulliam case and the Myers case from this court, those are plain error cases. When they get to the fourth factor where you have to show that the integrity and the public reputation of the court is at issue, they say that that fourth prong is akin to showing a miscarriage of justice. That to satisfy that fourth prong of plain error when it comes to rehave claims, you have to actually show actual innocence. So in that sense, we believe that the two standards are very much on par with one another. The government, it seems to agree with us. They also rely on plain error case law. If we found that plain error was met, I mean, there's the interesting case. I think you all cited it from Judge Crabb in western Wisconsin, where the fellow was charged with possession after pleading guilty to the underlying felony, but before he sentenced. That I understand. That's a much more ambiguous situation. Here we've got sentence for 23 months. So, Your Honor, the most important fact here is that he was sentenced up to 23 months, but he actually only spent four months and 20 days in prison. If you look at the case law across the country, the real salient factor is how much time the individual spends in custody, because that's really what drives home what you've been sentenced for. So the Tenth Circuit decision, the United States v. Wilson, we think is very good in this regard. It surveys the case law. It points out that what is most salient is the actual time spent in custody. There, the individual is sentenced up to eight years, but actually only spent time in juvenile custody. And the court granted, notwithstanding the fact that his sentence was obviously much longer than a year, the actual time he spent in custody was less than a year. So, you know, a lot of this turns on the vagaries of state law. You know, some states will just grant immediate probation and parole. Some states will grant the sentence and then suspend that sentence and grant probation and parole. We don't think that that difference should be really what determines, you know, whether a federal criminal conviction turns on that fact alone. And we think that the most salient factor in the case law is the actual time that's spent in custody. Well, that's, in the plain error context, that's been an easy fact to seize upon, at least in the cases that I've seen so far firsthand. And that settles it. But there's a difference, in essence, between saying, well, I've got an arguable defense. I might be able to convince some jurors that I didn't actually understand what had happened to me in the state courts and saying that that is a defense that a reasonable juror would have to accept. That's what I'm struggling with. I fully understand, Your Honor. Just to be crystal clear, our argument is that any reasonable juror would have a reasonable doubt. So even if we're sitting as the reasonable juror and we think on balance he would have known he was a felon, that still isn't enough. We have to show that any reasonable juror wouldn't even have a single reasonable doubt on the issue. Shloop is clear about this case, that at the end of the day, what separates guilt from innocence is still reasonable doubt. Obviously, that's a very difficult standard for the government to meet. And we think that if you look at, for example, district courts across the country, including the Hellams case in the Southern District of Illinois, that is a 2241 petition where they look to plain error case law because of that last prong of plain error, where the court is exercising its discretion on whether to correct an error or not, is a very challenging one that requires a showing that's akin to actual innocence. Certainly, those of us as judges find it a little difficult to believe that people don't know about felonies. But you're saying it has to be the jury then that understands that. The minor run of cases, the individual is going to know they're a felon. The Supreme Court said this in Greer. Most felons are going to know they're a felon just by the fact that they are a felon. We study statistics in our reply brief that on average when an individual is released from state custody, they will have spent close to three years in prison. That includes misdemeanors and felonies. If we just isolate felonies, that goes up. If you introduce federal crimes, it's going to be much higher than three years. So in the minor run of cases, that's going to be a closed and shut case. This is a very extraordinary case where the individual, Mr. Santiago, only spent four months in custody. And just the last thing to add is that the only reason he spent that time in custody was that his bail was set at $8,000, and he couldn't afford that. As soon as he was sentenced, he was granted immediate probation, didn't spend any more time in custody. So we don't think the mere fact that he couldn't afford bail. So his custody time is basically pretrial detention anyway. It's not punitive detention. That's right. It's pretrial detention. He pleads guilty, then is sentenced, and is let off. So the court in Rahafe noted that an individual who is only sentenced to probation or parole, spends no time in custody, is kind of your quintessential example of somebody who might not know they're a felon. The only difference between that example and Mr. Santiago in this case is that he couldn't afford bail. It might make a difference what he was told at sentencing. That's right, Your Honor. Just to that point, we believe that that's the government's primary argument. We don't believe it's our burden to introduce what they were told. We think that we've satisfied our burden by the mere fact that it's short length in custody, the fact that these crimes were for taking video games from his sister, taking a purse from his mother, the sort of things that are very different than the predicate felonies in this court's case law. Thank you. Good afternoon. May it please the court and opposing counsel. My name is Madeline Murphy. I'm an assistant U.S. attorney, and I'm appearing here on behalf of the respondent in this case, Warden Strieval, and I'm asking you to affirm the district court's denial of Marcos Santiago's Section 2254 petition, since Santiago failed to meet his burden of showing that a miscarriage of justice occurred regarding the Section 922 convictions. You said second 2254. We're talking about 2241, right? I'm sorry. 2241. We don't have a state official here. Section 2241. In the proceedings below in the district court, Santiago never contested the information set forth in the pre-sentence investigation report regarding his three prior sentences of up to 23 months. He's contesting those apparently for the first time on oral argument, which is improper. I think he's contesting whether he was aware at the time of it, and actually we've had this issue before where the question isn't did it happen. I mean, when you have stipulations that you were a felon, that's not enough. So, yeah, so it's a different, I don't know that by agreeing to the pre-sentence investigation report, he's saying I knew at the time that my pre-trial detention somehow would, and my serving of zero months in prison afterwards meant that I knew that I had been sentenced for a term exceeding one year. He's raising this specific argument for the first time on oral argument, Your Honor. In the district court. Well, the argument about the record, perhaps. Yes, yes, that is correct. It is his burden to show that no rational jury would have found that the government had met its burden of proof here of showing that he knew he was a convicted felon. Even though, of course, as a pre-Raheif case, nobody ever asked the jury. We don't have instructions and the like. That's correct, Your Honor. Nobody would have asked the jury prior to the Raheif decisions. But here we know that on three separate occasions he appeared in state court. First, the time he was convicted of these two theft offenses, and then each of the subsequent two parole violations, and he was sentenced to up to 23 months of imprisonment. So I'm looking at page 21 of the pre-sentence report. Theft by unlawful taking or disposition, three counts. Guilty plea entered, sentenced to time served, four months and 20 days, to 23 months imprisonment,  You know, I don't know that that tells us the answer to the question. I don't know that we can assume that the judge said, I'm sentencing you to 23 months imprisonment, but I'm going to give you a dispensation. The judge must have given him a specific sentence, and he did not contest either on direct appeal or in his section 22, but I realize that there was some issue with the sentence on his prior conviction there. The operative issue here is whether he- But does he know? I mean, are people that sophisticated? Do people know when they serve four months and 20 days that they've been sentenced for a term exceeding one year? The issue of how much he served really- People with mental disabilities are very concrete. The issue is whether he understood that he had been sentenced to a- The language of the statute is a term exceeding one year. Nobody uses the word felony. That's correct. And so when it's measured in time, and the time he serves is four months and 20 days, then does he know that's more than a year? The operative term is punishable, not punish head, as the Shakespeareans would say. He didn't have to have known that he had served more than a year. He had to know that he could have served, that the potential penalty- Right, and where's your evidence that he knew he could have served more than a year? Perfect question. Because he was told on three occasions that he was sentenced up to 23 months. Well, you say he was told on three occasions, and we know that that's what the court did because- or at least we can rely on the PSR for that. Was this spelled out for him? I mean, don't we need an evidentiary hearing to find out whether- what he was told and how he might have processed that? Judge, I don't believe he's met his burden of getting an evidentiary hearing on this record. He should have brought forth in the district court, if that evidence did exist, more concrete evidence to the effect that he actually wasn't- that would contest the conclusions that are in the pre-sentence investigation report. Well, it's his knowledge. The pre-sentence investigation, that's the whole point of rehape, that the knowledge requirement applies to one's status, whether you're an illegal immigrant or whether you're a felon or whether you're whatever you are. And so it's the knowledge, and I don't see anything in the pre-sentence report that goes to his personal knowledge of his status as one who has been sentenced. I mean, all these other cases involve- no one believes somebody who spent eight years in prison that he didn't know that he'd been sentenced to something punishable by more than a year. I mean, it's laughable. And that's what most of the cases post-rehape have been like. But this isn't. Well, the pre-sentence report was prepared, I believe, in 2005 when his knowledge of his status was under the state of the law at that point in time. That's why it's not there. That's why you can't rely on the pre-sentence report as evidence of his personal knowledge. But we can infer from the pre-sentence report, which tells us that he was sentenced on three separate occasions to a term of imprisonment of up to 23 months that he must have known that he had been convicted of a crime punishable by a term in excess of one year. I understand that that's your position, and I'm just wondering whether that's such a solid assumption or whether we need more evidence. That's certainly evidence that you would present to show that he knew that. But if that had been presented to a jury and then he had presented evidence- let's suppose it's a post-rehape case, and so now all the instructions are proper and we know that this has to be proved. His case comes closer to a case where I could imagine a jury thinking, actually, this guy didn't have a clue. He's very concrete. He only served four months and change. He didn't know. Judge, had this been a post-rehape district court criminal case, then undoubtedly the prosecution would have obtained the transcripts from the guilty plea on this prior state conviction, which would have revealed, just because to be constitutionally sufficient, he must have been informed of the maximum penalty of the offensive conviction. It would have revealed the exact wording of the sentence. We don't have that here. It's our position that it would have been the petitioner's burden if he was at this point contesting the information in the pre-sentence investigation report to come forward with that evidence, and he did not, so we're left with the record before us, which states that on three separate occasions he was sentenced to a term of imprisonment of up to 23 months, which extends 20 years. And immediately commuted back to time served. Whether it was immediately commuted back to time served- He didn't serve another day in prison. That's entirely correct, Your Honor, but when someone is granted immediate parole, in many instances that does not occur in the courtroom. That occurs after the individual is sentenced. They're sent to the state penitentiary and- But there's no indication that that happened here. That's entirely correct, Your Honor. There's no indication. That's all speculative. Based on the facts that are before the record, the uncontested pre-sentence investigation report, Marcos Santiago must have known that he was convicted of a crime punishable by imprisonment of a term of more than one year, given the sheer repetition of 23 months, 23 months, 23 months over the course of approximately one year. So under these circumstances, I would ask that this court affirm the district court's finding that the plaintiff did not show that a miscarriage of justice occurred in this case. Thank you. Thank you, counsel. General? So, Your Honor, I'd just like to address the salient point here of Mr. Santiago being sentenced up to 23 months on three occasions. We don't object to the PSR. We don't object to the fact that this, in fact, happened. All we point out is that we don't know what he was told when he violated his probation and at those hearings. We know for a fact that being told once you're sentenced that much, that's not enough. Otherwise, your case would be a deadliner. Every single felon would have been sentenced to a felony at some point. So the plea hearing itself isn't really a non-issue. It's these second and third hearings. And at those, again, there's five different crimes he's being sentenced for 23 months for. That's less than five months of crime. It's not clear any one of them would have been a felony. And we think that, along with all the other factors we pointed to, is four months in custody, the fact that the crimes were for taking his mom's purse, video games, radios, not at all like this court's case law in which there's murder or the predicate felony is being a felon in possession already or escape of a felon from a prison in which you immediately know you are a felon because that is what your crime was. So for these reasons, we would ask the court to reverse the conviction below or at a minimum vacate and remand for an evidentiary hearing on the issue of the sentencing transcripts. Thank you, Mr. Anwar. You took this case. You and your firm took this case on appointment. Yes. Thank you very much for taking the case and doing a fine job representing your client. Thank you. Thanks to both counsel. And the case is taken under advisement, and the court is in recess.